IN THE UNITED STATES DISTRICT COURT FILED
FOR THE EASTERN DISTRICT OF TENNESSEE
EASTERN DIVISION at KNOXVILLE    2009 MAR 11  P 12: 40

U.S. DISTRICT COURT
EASTERN DIST. TENN.

BY_____DEPT. CLERK

EDWINA GAIL ALLRED,

    Plaintiff,

v.

No. 3:09-CV-100
**JURY DEMANDED**
Varlan/Shirley

SCOTT COUNTY, TENNESSEE,
RICKY KEETON in his official capacity as
Mayor of Scott County, Tennessee,
SCOTT COUNTY SHERIFF'S DEPARTMENT,
ANTHONY LAY in his official capacity as
Sheriff of Scott County, Tennessee,
and JOHN DOE 1-5,

    Defendants.

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### and for NEGLIGENCE

Now comes the Plaintiff, EDWINA GAIL ALLRED, and for her Complaint against the Defendants, SCOTT COUNTY, TENNESSEE, RICKY KEETON in his official capacity as Mayor of Scott County, Tennessee, SCOTT COUNTY SHERIFF'S DEPARTMENT, ANTHONY LAY in his official capacity as Sheriff of Scott County, Tennessee, and JOHN DOE 1-5, states as follows:

### I. PARTIES

1. Plaintiff, EDWINA GAIL ALLRED (hereinafter "Plaintiff") is a citizen and resident

of Anderson County, Tennessee, residing more particularly at 206 Willow Run, Clinton, Tennessee 37716. However, at all times material hereto Plaintiff was a citizen and resident of Scott County, Tennessee.

2. Defendant, SCOTT COUNTY, TENNESSEE (hereinafter "*COUNTY*") is a governmental entity organized under the Constitution and laws of the State of Tennessee, and may be served with process by serving the Honorable John Beaty, County Attorney for Scott County, Tennessee, at his office address of 3 Courthouse Square (P.O. Box 302), Huntsville, Tennessee 37756.

3. Defendant, RICKY KEETON (hereinafter "*Mayor*") is the Mayor of Scott County, Tennessee, and is being sued herein only in his "official capacity"; Defendant, *Mayor* maintains an office at the County Office Building, 2845 Baker Highway (P.O. Box 180), Huntsville, Tennessee 37756.

4. Defendant SCOTT COUNTY SHERIFF'S DEPARTMENT (hereinafter "*SCSD*") is a governmental entity, being an official department of Defendant, COUNTY, and may be served with process by serving the Honorable John Beaty, County Attorney for Scott County, Tennessee, at his office address of 3 Courthouse Square (P.O. Box 302), Huntsville, Tennessee 37756.

5. Defendant, ANTHONY LAY (hereinafter "*Sheriff*") is the Sheriff of Scott County, Tennessee, and is being and is being sued herein only in his "official capacity"; Defendant, *Sheriff* maintains an office at 29 Courthouse Square (P.O. Box 121), Huntsville, Tennessee 37756.

6. Defendants, JOHN DOE 1-5 are unidentified parties, including Scott County Deputies and/or other employees identified as "Jailers", employed by the Scott County Sheriff's

Department (*i.e.*, Defendant, *SCSD*). At this time the identities (including the names and addresses) of these various unknown Employees (i.e., JOHN DOE 1-5) of Defendant, *SCSD* are Unknown to Plaintiff; however, Plaintiff expects to be able to identify these various Employees (i.e., JOHN DOE 1-5) of Defendant, *SCSD* through the course of Discovery procedures to be conducted in this cause. Plaintiff hereby reserves the right (subject to the permission of this Honorable Court and the provisions of the Federal Rules of Civil Procedure) to Amend this Complaint after the various unknown Employees (i.e., JOHN DOE 1-5) of Defendant, *SCSD* (involved in the activities complained of herein) have been properly identified through the course of Discovery procedures.

## II. JURISDICTION

7. Plaintiff avers that Jurisdiction and Venue are proper in this cause, pursuant to the provisions of 28 U.S.C. §1331 and 28 U.S.C. §1367; further, all acts complained of in this cause occurred in Scott County, Tennessee.

## III. STATEMENT OF FACTS

8. In approximately November, 2007, Plaintiff was diagnosed with a serious medical condition (*i.e.*, "Pseudo tumor Cerebri"); immediately following said diagnosis Plaintiff's attending medical providers prescribed the (prescription) medication "Diamox", to be taken six (6) times daily to avoid severe headaches, and particularly to avoid excess fluid buildup in her spinal cord as well as an attendant serious risk of blindness.

9. At all times material hereto, Plaintiff, her fiancé (*i.e.*, Rodney Harness) and their daughter were residing at Plaintiff's fiancé's family home in Scott County, Tennessee.

10. On or about March 29, 2008, Plaintiff made a telephone call for help and assistance (due to a domestic disturbance caused by Plaintiff's fiancé's <u>mother and sister</u> at the aforesaid

family home in Scott County, Tennessee) to the Scott County Sheriff's Department (*i.e.*, Defendant, *SCSD*); arriving at Plaintiff's home were Scott County (Tennessee) Sheriff's Deputy Karen Woodward, who was accompanied by Scott County (Tennessee) Sheriff's Deputy Troy Hull and also Scott County (Tennessee) Sheriff's Deputy Gary Sexton; Deputies Woodward, Hull and Sexton are each Deputies of Defendant, *Sheriff*, and are each also employees of Defendant, *SCSD*. Deputies Woodward, Hull and Sexton were responding to the aforesaid telephone call for help and assistance <u>made by the Plaintiff</u> from the aforesaid family home.

11. When Deputies Woodward, Hull and Sexton arrived (*i.e.*, at the Plaintiff's fiancé's aforesaid family home, in Scott County, Tennessee), Plaintiff attempted to explain to them the various events which resulted in her telephone call for help and assistance (leading up to the call she made to the Scott County (Tennessee) Sheriff's Department). However, despite the fact that it was <u>Plaintiff herself</u> who had telephoned (to the Sheriff's Department) for help and assistance, Deputies Woodward, Hull and Sexton <u>arrested Plaintiff and her fiancé</u> (rather than the actual aggressors and culprits, *i.e.*, Plaintiff's fiancé's <u>mother and sister</u>), and transported them to the Scott County Jail.

12. Some time after being transported to the Scott County Jail, Plaintiff was asked by a "booking officer" (*i.e.*, an employee of Defendants *Sheriff* and *SCSD*) if she was "under any medication at the time", to which Plaintiff properly responded that she "ha[d] to take her prescription medication, "Diamox" six (6) times a day or else she would suffer painful headaches and could become blind from her pseudo tumor". The "booking officer" advised Plaintiff that a physician would indeed be notified.

13. Plaintiff remained confined in the custody of Defendants, *Sheriff*, *SCSD* and *County* from approximately 5:00 P.M. on Saturday, March 29, 2008 until approximately 2:00 P.M. on

Monday, March 31, 2008.

14. While Plaintiff remained confined in the custody of Defendants, *Sheriff, SCSD* and *County* she made numerous, repeated requests to at least five (5) different *SCSD* deputy jailers, (*i.e.*, Defendants, JOHN DOE 1-5), literally begging them that she "needed to take her [prescription] medication or [she] could go blind". During this same period of time, Plaintiff's fiancé (*i.e.*, Rodney Harness) also made numerous, repeated attempts to have the various *SCSD* officers and jailers (*i.e.*, Defendants, JOHN DOE 1-5) to acknowledge that they were going to respond to Plaintiff's serious medical condition; however, all of these numerous, repeated attempts to gain the attention of the various *SCSD* officers and jailers (*i.e.*, Defendants, JOHN DOE 1-5) were unsuccessful.

15. At approximately 2:00 A.M. on Sunday, March 30, 2008, Plaintiff complained to various *SCSD* officers and jailers (*i.e.*, Defendants, JOHN DOE 1-5), that she was suffering from severe headaches, blurred vision, dizziness, and nausea. She repeatedly (but again, unsuccessfully) requested access to her required prescription medication.

16. At all times material hereto (*i.e.*, while Plaintiff remained confined in the custody of Defendants, *Sheriff, SCSD* and *County*) Plaintiff was also on a strict "diet and exercise" regimen which was also required to help control the "Pseudo tumor" symptoms; during numerous and repeated requests to the jailers (*i.e.*, Defendants, JOHN DOE 1-5) Plaintiff regularly advised them of her need to eat high potassium foods as well as her need for regular exercise.

17. Indeed, during all times material hereto, not only was Plaintiff not allowed access to an appropriate place to exercise, but she was literally unable to even merely walk around in her jail cell due to the serious, unconscionable (and unconstitutional and unlawful) overcrowding of the Scott County Jail. Plaintiff further avers that she had to walk over or around inmates who

were sleeping in the cell just to use the toilet facilities, as well as people having to walk over and around her as she was literally forced to sleep on the jail cell floor.

18. Indeed, while Plaintiff was allowed to obtain a mat to sleep on, she was refused any blankets while she was incarcerated by Defendants, *Sheriff*, *County* and *SCSD*, despite the cold ambient temperatures existing at that time.

19. Further, however--and just as with her urgent requests for her prescription medication--Plaintiff's requests for her required exercise and dietary needs were ignored.

20. While Plaintiff remained confined in the custody of Defendants, *Sheriff*, *SCSD* and *County*, Plaintiff began experiencing a "tingling" feeling in her body as the severe headaches, nausea and dizziness continued. Alarmed, and beginning to panic, Plaintiff again begged to her jailers (*i.e.*, Defendants, JOHN DOE 1-5) that she "[felt] like she might suffer a seizure at any time", and further begged for "someone to please get [her] medication". Plaintiff (with the attempted assistance of a fellow inmate) again tried several more times to beg the jailers (*i.e.*, Defendants, JOHN DOE 1-5) for her medication—but again, to no avail.

21. On or about Sunday, March 30, 2008, at approximately 6:00 P.M. (*i.e.*, while Plaintiff continued to remain confined in the custody of Defendants, *Sheriff*, *SCSD* and *County*), Plaintiff began experiencing loss of vision in her left eye, and blurred vision in her right eye. Once again, Plaintiff begged the jailers (*i.e.*, Defendants, JOHN DOE 1-5) for appropriate medical attention (and for her prescription medication), while now informing the jailers (*i.e.*, Defendants, JOHN DOE 1-5) of her vision loss.

22. On or about Monday, March 31, 2008 at approximately 2:00 P.M. a sympathetic Scott County General Sessions Court Judge (*i.e.*, the Honorable James L. Cotton, Jr.) became aware of Plaintiff's condition (when she was taken before him for arraignment), and he ordered

her immediate release from custody.

23. Immediately following her release from the custody of Defendants, *Sheriff*, *SCSD* and *County*, (*i.e.*, on or about Monday, March 31, 2008) Plaintiff immediately contacted her physicians and resumed taking her prescription medication.

24. As a proximate result of her now-deteriorating medical condition, caused by the actions and/or inactions of Defendants (as complained of herein), on Tuesday, April 1, 2008 Plaintiff was ordered by her attending physician to undergo a "spinal tap" medical procedure; this very painful medical procedure was now required in order to remove excess fluid which had accumulated as a direct and proximate result of her failure to take her prescription medication during the period that she was incarcerated (as complained of hereinabove).

25. Plaintiff's condition had deteriorated so extensively, and her condition had become so serious (due to the swelling caused by her failure to take her prescription medication) that her medical providers tried nine (9) attempts to complete the (very painful) "spinal tap" procedure—but were unable to do so as a proximate result of Plaintiff's deteriorated condition.

26. On or about Friday, April 4, 2008 Plaintiff was finally able to see her eye specialist (*i.e.*, John C. Hoskins, M.D., with Southeastern Retina Associates, P.C.) who discovered that Plaintiff's vision had seriously deteriorated from a "normal" "20/20" in her right eye and "20/25" in her left eye (*i.e.*, prior to March 29, 2008) to "20/50" in her right eye and "20/200" in her left eye (*i.e.*, after March 31, 2008).

27. Further, Plaintiff's medical providers now required that her prescription dosage (of "Diamox") now be significantly increased, as a proximate result of her vision loss, dizziness, nausea, and severe headaches.

28. Plaintiff has now been advised by her physicians and other medical providers that as

a direct and proximate result of the failure of the deputy jailers (*i.e.*, Defendants, JOHN DOE 1-5) to provide Plaintiff with her required prescription medication, that she has experienced undue pain and suffered serious and severe complications and vision loss.

29. Plaintiff alleges that it was unconscionable that the deputy jailers (*i.e.*, Defendants, JOHN DOE 1-5) did not adequately and appropriately respond to Plaintiff's reasonable and necessary requests and pleas for her prescription medications, and other necessary requirements (*i.e.*, dietary restrictions and exercise regimen), and did not take necessary and appropriate action to provide Plaintiff with appropriate medical care and attention.

30. Plaintiff alleges that Defendants should be required to provide an inmate—particularly a person who is presumed innocent until proven guilty--with her properly prescribed (and necessary) medication, and further that they should be required to provide an inmate with appropriate foods when dietary restrictions exist, and to allow appropriate exercise.

31. Plaintiff further alleges that Defendants should be required to provide an inmate—particularly a person who is presumed innocent until proven guilty—with proper medical care.

32. Plaintiff avers that the injuries which were suffered by Plaintiff would not ordinarily occur, but for the negligence, either of omission or commission, of the Defendants (as referenced hereinabove, and as complained of hereinabove.

33. Plaintiff further avers that the Defendants were each guilty in this matter of gross negligence and/or reckless disregard for the health and safety of its inmates, including Plaintiff, particularly as Defendants, JOHN DOE 1-5 were clearly inadequately and/or improperly supervised.

34. Plaintiff further avers that the actions complained of hereinabove by Defendants, were done intentionally, willfully, maliciously and without provocation, and that said acts

thereby constituted an assault and battery upon the Plaintiff.

35. In the (further) alternative, Plaintiff avers that each of the Defendants involved in the matter complained of herein engaged in a common scheme and plan and took overt action in furtherance of that plan for unlawful purposes and in concert one with another, thereby engaging in a civil conspiracy.

36. As a direct and proximate result of the negligence, gross negligence and/or reckless and/or intentional conduct of the Defendants (as referenced hereinabove) and/or the intentional acts of Defendants, JOHN DOE 1-5, Plaintiff, has suffered debilitating injuries and damages. The serious personal injuries suffered by Plaintiff as a proximate result of the Defendants negligent, grossly negligent and/or reckless and/or intentional actions or conduct (or in the alternative, the intentional acts of Defendants, JOHN DOE 1-5) have required (and may require in the future) professional medical care (including invasive surgical procedures) as a direct and proximate result of the negligent, grossly negligent, reckless and/or intentional and unlawful conduct of the Defendants, and/or the intentional acts of Defendants, JOHN DOE 1-5, which conduct resulted in said injuries to Plaintiff.

37. Plaintiff has suffered great pain and discomfort and loss of employment as a result of the injuries she sustained (as complained of hereinabove).

38. In addition to the foregoing, Plaintiff avers that as a direct and proximate result of the Defendants' conduct (as complained of hereinabove), that she suffered extreme emotional and mental distress due to the possibly life-altering nature (*i.e.*, potential blindness) of the injuries inflicted upon her.

39. Accordingly, Plaintiff avers that the conduct (by the Defendants, JOHN DOE 1-5) was intentional and reckless and was intended by them to cause Plaintiff severe emotional

distress and mental injury and was outrageous. Plaintiff's emotional distress all directly resulted from the conduct of Defendants, JOHN DOE 1-5, as complained of hereinabove.

40. The conduct of each of the Defendants (including that of the Defendants, JOHN DOE 10-5) as complained of hereinabove was so outrageous and so beyond the bounds of civilized society such that same cannot be tolerated; accordingly, punitive damages are warranted in this cause to deter Defendants and other similarly situated persons from engaging in such conduct in the future.

## COUNT I – VIOLATION OF CIVIL RIGHTS

41. The Plaintiff realleges all previous paragraphs and incorporates those paragraphs by reference as though fully set forth herein.

42. The Defendants individually and collectively deprived Plaintiff of her rights, privileges, and immunities, secured by the laws of the United States, pursuant to 42 U.S.C. §1983, and the Eighth and Fourteenth Amendments to the United States Constitution.

43. The "John Doe" Defendant Deputy Jailers (*i.e.*, Defendants, JOHN DOE 1-5) are each liable for not rendering proper care to Plaintiff while she was incarcerated in the Scott County Jail, in the custody of Defendants, SCOTT COUNTY, TENNESSEE, SCOTT COUNTY SHERIFF'S DEPARTMENT, RICKY KEETON, Mayor of Scott County, Tennessee and ANTHONY LAY, Sheriff of Scott County, Tennessee.

## COUNT II – INTENTIONAL AND NON-NEGLIGENT ACTS BY DEPUTIES

44. The Plaintiff realleges all previous paragraphs and incorporates those paragraphs by reference as though fully set forth herein.

45. Defendants, SCOTT COUNTY, TENNESSEE, RICKY KEETON, Mayor of Scott County, Tennessee, ANTHONY LAY, Sheriff of Scott County, Tennessee and SCOTT

COUNTY SHERIFF'S DEPARTMENT are each responsible for the acts or failures to act of its deputies (including Defendants JOHN DOE 1-5) pursuant to the provisions of Tennessee Code Annotated §8-8-302 (2002). Deputy jailers are described under said statute as "deputies".

46. The actions described hereinabove, including paragraphs 8-43, constitute intentional and non-negligent acts, with the attendant damages, for which Defendants, SCOTT COUNTY, TENNESSEE, RICKY KEETON, Mayor of Scott County, Tennessee, ANTHONY LAY, Sheriff of Scott County, Tennessee and SCOTT COUNTY SHERIFF'S DEPARTMENT are each liable.

## COUNT III – SHERIFF'S LIABILITY FOR ACTS OF JAILERS

47. The Plaintiff realleges all previous paragraphs and incorporates those paragraphs by reference as though set forth fully herein.

45. Pursuant to the provisions of Tennessee Code Annotated §41-4-101 (2006), the Sheriff is civilly responsible for the acts of the jailers.

46. The actions described hereinabove, including paragraphs 8-43, constitute intentional and non-negligent acts, with the attendant damages, for which Defendants, SCOTT COUNTY, TENNESSEE, RICKY KEETON, Mayor of Scott County, Tennessee, ANTHONY LAY, Sheriff of Scott County, Tennessee and SCOTT COUNTY SHERIFF'S DEPARTMENT are each liable.

### WHEREFORE, PREMISES CONSIDERED, PLAINTIFF PRAYS:

1. That proper process issue and be served upon each of the Defendants and that they each be required to appear and Answer this Complaint within the time required by law.

2. That a jury of six persons be empaneled to try the issues raised in this cause.

3. That upon a Trial of this cause, that Plaintiff be awarded Judgment against each of the Defendants in the amount of ONE MILLION and 00/100 DOLLARS ($1,000,000.00) (each) in compensatory damages, and an additional ONE MILLION and 00/100 DOLLARS

($1,000,000.00) (each) in appropriate punitive damages, for a grand total of NINE MILLION DOLLARS ($9,000,000.00) in compensatory damages and NINE MILLION DOLLARS ($9,000,000.00) in punitive damages.

4. That the costs of this action be awarded to the Plaintiff, including all discretionary costs.

5. For all such other, further and general relief to which the Plaintiff may be entitled and as the justice of her cause may demand.

Respectfully submitted this 11th day of March, 2009.

_____
ROGER D. HYMAN (Tenn. BPR No. 011002)
Attorney for Plaintiff
*HYMAN, CARTER & PATEL, PLLC*
P.O. Box 26072
Knoxville, Tennessee 37912-9672
(865) 686-7789

_____
MITAL D. PATEL (Tenn. BPR No. 026889)
Co-Counsel for Plaintiff
*HYMAN, CARTER & PATEL, PLLC*
P.O. Box 26072
Knoxville, Tennessee 37912-9672
(865) 686-7789